# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-3088   September Term, 2023

FILED ON: DECEMBER 12, 2023

UNITED STATES,
            APPELLEE

v.

JESUS RIVERA,
            APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cr-00060)

Before: SRINIVASAN, *Chief Judge*, and MILLETT and PAN, *Circuit Judges*.

**JUDGMENT**

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that Jesus Rivera's conviction and sentence be **AFFIRMED**.

Appellant Jesus Rivera attended the riot at the United States Capitol on January 6th, 2021. *United States v. Rivera*, 607 F. Supp. 3d 1, 3–5 (D.D.C. 2022). Rivera videotaped the events at the Capitol and added his own commentary. In one video taken as he walked to the Capitol grounds, he said he was "about to take [his] ass to the middle of the [United] State[s] Capitol." *Id.* at 6. His footage showed that he moved past destroyed fencing marked with "Area Closed" signs. *Id.* In a portion of the video showing rioters attempting to break through a police line, Rivera exclaimed, "Patriots are going crazy. Let's get out there!" *Id.* After filming the fall of the police line, Rivera predicted that "it was going to get bad." *Id.* He then followed the group to the Upper Terrace, noting that police officers were shooting pepper spray. *Id.* Rivera nevertheless pressed on.

While on the Upper Terrace, Rivera filmed the crowd breaching the Senate Wing and

2

Parliamentarian Doors, remarking:

> "This is what me and my boy were talking about, saying [that] the only way this would be a real revolution is if we go in and pull their asses out of there. This is the only fucking way. All this fucking talk—it has to get done, dude. This is what we need. This is what they needed."

*Rivera*, 607 F. Supp. 3d at 6–7. Rivera also saw fellow rioters trying to climb a wall and shouted to them, "there's an easier way up!" *Id.* at 6. He then entered the Capitol through a broken window and stayed for approximately twenty minutes, after which he exited through another broken window. *Id.* at 7. Later, he told a friend, "I can honestly say I had a great time." *Id.*

Following a bench trial in the United States District Court for the District of Columbia, the district court convicted Rivera on four counts: (1) Entering and Remaining in a Restricted Building in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building in violation of 18 U.S.C. § 1752(a)(2); (3) Violent Entry and Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). *Rivera*, 607 F. Supp. 3d at 2–3.

At sentencing, Rivera faced a recommended Sentencing Guidelines range of six to twelve months of imprisonment on Counts 1 and 2 and a statutory maximum sentence of six months of imprisonment on Counts 3 and 4. The Government recommended a sentence of nine months of imprisonment, twelve months of supervised release, and $500 in restitution. Rivera asked for probation. The district court imposed a sentence of eight months of imprisonment on Counts 1 and 2 and six concurrent months of imprisonment on Counts 3 and 4. The court also sentenced Rivera to twelve months of supervised release and ordered him to pay $500 in restitution and $70 in special assessments.

On appeal, Rivera first challenges his convictions on Counts 2, 3, and 4, which generally encompass entering the Capitol and engaging in disorderly and disruptive conduct there. He contends that he could not be convicted on those counts because his conduct consisted solely of recording the events at the Capitol "as a cinematographer." Rivera Br. 9. He describes his conduct as merely "documenting and keeping his viewers informed on what was taking place around him." *Id.* He "stresse[s] that there was no evidence given at trial other than [that he] was simply walking and capturing what he saw on video." *Id.* at 8. That conduct, he maintains, did not exhibit any intent "to impede or disrupt the orderly conduct" of congressional proceedings. *Id.* at 10.

3

Because Rivera argues that his conduct "did not fall within" the relevant statutes, *id.* at 8, 10, and does not challenge the district court's interpretation of the conduct reached by the statutes, we understand him to present a challenge to the sufficiency of the evidence. When confronting a sufficiency-of-the-evidence challenge, the question for us is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coleman v. Johnson*, 566 U.S. 650, 654 (2012) (per curiam) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). And here, because Rivera's sufficiency challenge relies entirely on his contention that the evidence showed only that he simply documented the events in the manner of a journalist, the question is whether any rational factfinder could have concluded that he did more than that.

A rational trier of fact could have readily determined that Rivera did more than merely document the events of January 6th. The evidence fully supported the district court's conclusion that Rivera "was a willing and supportive participant in the riot" while he was in the Capitol and on its surrounding grounds. *Rivera*, 607 F. Supp. 3d at 5–7. In particular, the evidence supported the district court's conclusion that he was in league with the rioters and shared their intent to disrupt Congress. *Id.* The government introduced evidence, for instance, that Rivera assisted other rioters in breaching the Capitol building, shouting to them that there was "an easier way up!" when he saw some of them attempting to climb a wall. *Id.* at 6. He also told another rioter during the riot of his desire to "go in and pull their [i.e. members of Congress's] asses out of" the Capitol so that "this would be a real revolution." *Id.* at 7. Rivera's decision to enter the Capitol despite signs forbidding his access and witnessing police fighting to keep people out of the Capitol further evidence his presence in and around the Capitol as a law-breaker, and not a journalist. In addition, Rivera entered and exited the Capitol through broken windows, and he later told a friend that he "had a great time." *Id.* Those are not the actions of a person who simply chronicled the events as a cinematographer, without any intent to disrupt Congress.

Rivera raises various other challenges to his convictions in his reply brief, including that (i) he was convicted for what other rioters did rather than for his own conduct, (ii) the government failed to prove that he was a cause of the disruption to government proceedings as required by 18 U.S.C. § 1752(a)(2), and (iii) the district court violated his First Amendment rights in its consideration of his videos. Because Rivera did not raise those objections until his reply brief, he has forfeited them. *United States v. Powers*, 885 F.3d 728, 733–34 (D.C. Cir. 2018).

4

In addition to his challenge to his convictions, Rivera also challenges his sentence. He contends that the district court imposed an excessive sentence to punish him for exercising his constitutional right to go to trial rather than plead guilty. Rivera, however, cites no evidence supporting his allegation that the district court punished him for going to trial. He submits that his within-Guidelines sentence was unusually long. But the Government submitted to the district court a table of the sentences that had been imposed for similarly situated defendants charged with offenses related to January 6, and that table showed that Rivera's sentence was not an isolated outlier. Table 1, Attachment to Govt. Sent'g Mem. at 28–29, *United States v. Rivera*, 607 F. Supp. 3d 1 (D.D.C. 2022) (No. 21-060), ECF No. 73-1. The Government also gave the district court an example of another defendant who had engaged in comparable conduct and had been sentenced to eight months of imprisonment, the same sentence of imprisonment that the district court imposed on Rivera. Govt. Sent'g Mem. at 24–25, *United States v. Rivera*, 607 F. Supp. 3d 1 (D.D.C. 2022) (No. 21-060), ECF No. 69. Rivera relies heavily on the non-binding opinion in *Thorne v. United States*, in which a trial court imposed a harsher sentence as a penalty for the defendant exercising his right to confront a witness at trial. 46 A.3d 1085, 1087 (D.C. 2012) (noting that the trial judge stated that she would "take into account the way the case was [tried]" in sentencing the defendant). Here, however, there is no evidence that the district court judge penalized Rivera for going to trial.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

                                     **FOR THE COURT:**
                                     Mark J. Langer, Clerk

BY:   /s/
       Daniel J. Reidy
       Deputy Clerk